IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| BNLfood INVESTMENT SARL,<br>1, z.a. Salzbaach<br>L-9559 Wiltz, Luxembourg<br><br>    Plaintiff,<br><br>v.<br><br>MARTEK BIOSCIENCES CORP.,<br>6480 Dobbin Road<br>Columbia, Maryland 21045<br>(Howard County)<br><br>    Defendant. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff BNLfood Investment SARL ("Plaintiff" or "BNLfood"), a group of international companies in Egg Science & Technology which has for several years been working to enter the United States market for sales of nutrition ingredients Omega-3 docosahexaenoic acid ("DHA") and Omega-6 arachidonic acid ("ARA") for infant formula, brings this action under Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and the Maryland Antitrust Act, Md. Code Com. Law II § 11-204(a), to recover damages and to enjoin defendant Martek Biosciences Corp. ("Martek") from entering into and conducting business pursuant to exclusive dealing agreements, and for its Complaint alleges as follows:

**INTRODUCTION**

1. This is an action against Martek for its efforts to monopolize the manufacture and sale of DHA and ARA for use in infant formula in the U.S. market. Faced with an emerging competitive threat

from BNLfood, Martek has acted to protect its monopoly position by extending its exclusive dealing contracts in violation of U.S. antitrust laws.

2. The plaintiff in this case is in the advanced stages of the Food and Drug Administration ("FDA") voluntary approval process and has invested heavily in regulatory, marketing, and research and development efforts to develop a client base in the U.S. and abroad for sales of DHA and ARA. Plaintiff is positioned to enter the U.S. market for DHA and ARA infant formula ingredients within the calendar year, where it will be in direct competition with defendant Martek.

3. BNLfood has demonstrated, through sufficient evidence, a clear intent and preparedness to enter into the U.S. market for DHA and ARA infant formula ingredients via a concrete plan that it has been developing over several years.

4. BNLfood has attempted to deal with major infant formula manufacturers in the United States to position itself in advance with customers for product delivery immediately upon receipt of voluntary FDA approval.

5. Martek has made clear, through its own statements, that it has a monopoly position in supplying DHA and ARA to infant formula producers and that it has abused its market position through long-term, sole-source contracts and pricing incentives that punish customers that are not sole-sourced to Martek.

6. While potential customers have had a positive reaction to BNLfood's entry into the market, they have also informed BNLfood that they are prohibited from placing orders because of their long-term Martek contracts.

7. Plaintiff is threatened with loss or damage by the defendant's exclusionary conduct in the form of loss of substantial investment and ability to compete, and, accordingly, Plaintiff brings this

action for damages and injunctive relief pursuant to Sections 4 and 16 of the Clayton Act §§ 15 and 26, and Md. Code Com. Law II § 11-209(b).

## JURISDICTION

8. This action is brought under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 3 of the Clayton Antitrust Act, 15 U.S.C. § 14, to recover treble damages for injuries caused to BNLfood's business by Martek. BNLfood also seeks injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, to enjoin Martek's ongoing unlawful actions. The plaintiff also alleges monopolization and attempted monopolization under the Maryland Antitrust Act, Md. Code Com. Law II § 11-204(a).

9. This Court has subject matter jurisdiction over the federal antitrust claims asserted in this action under Title 28 United States Code §§ 1331 and 1337, as this action arises under the Sherman Act, 15 U.S.C. § 2, and the Clayton Act, 15 U.S.C. §§ 15 and 26. This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391, in that the defendant transacts business and is found in the District of Maryland.

## JURY TRIAL DEMANDED

11. Plaintiff demands a trial by jury.

## THE PARTIES

12. The plaintiff named in this complaint, BNLfood, is a for-profit group of international companies existing and doing business under the laws of Luxembourg, with its principal place of business at 1, z.a. Salzbaach, L-9559 Wiltz, Luxembourg. Under the names Belovo, Ovolife, and Columbus, BNLfood produces and markets healthy eggs, egg-derived nutraceutical and food ingredients, and egg-extracted proteins.

13. For the past 40 years, BNLfood has built a strong global reputation in Egg Science & Technology, and Belovo ingredients are distributed in more than 60 countries worldwide.

14. BNLfood currently markets and sells its DHA and ARA in Europe and Asia. To achieve its aim of reaching the U.S. market, BNLfood is working through the FDA voluntary approval process and estimates that it will receive this voluntary approval by October 2011, at which time BNLfood believes it would – but for Martek's anticompetitive conduct – begin delivering products to customers in the United States.

15. Defendant Martek is a Delaware corporation with its principal place of business at 6480 Dobbin Road, Columbia, Maryland 21045.

16. Martek is a producer of food ingredients from microbial sources (algae), including DHA for use in infant formula, pregnancy and nursing products, foods, beverages, dietary supplements and animal feeds, and ARA for use in infant formula and milk.

17. Martek had annual sales of US$450 million for the fiscal year ending October 31, 2010.

18. Martek has five locations in the United States and approximately 600 employees.

19. Martek's DHA product, *life's*DHA, is the only source of DHA currently used in infant formula in the United States and is included in more than 99 percent of all formulas on the U.S. market.

20. Martek is currently holds the patent for bioengineered ARA. Royal DSM N.V., a leading Life Sciences and Materials Sciences company, currently manufactures ARA exclusively for Martek in exchange for Martek's release of the patent to it.

21. Martek boasts in its 2009 Annual Report that it supplies product to companies representing "nearly 100% of the estimated $4.5 billion U.S. retail market for infant formula." Ex. 1 at *15.

22. Martek recently acquired Amerifit Brands, a dietary supplement producer that sells its products in most major drug, grocery, and specialty stores.

## NATURE OF TRADE AND COMMERCE

23. The relevant product and geographic markets for the purposes of this action are the manufacture and sale of DHA and ARA nutrition ingredients for infant formula in the United States.

24. By virtue of its market power, Martek is currently unconstrained by actual competition in the relevant market.

25. Defendant is engaged in "commerce," as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12(a), having manufactured and sold the relevant products in interstate commerce and engaged in the exclusionary conduct described herein through interstate channels.  Defendant's conduct has and will have a substantial, direct, and reasonably foreseeable effect on interstate commerce.

26. Any restraint of trade in the manufacture and sale, as well as the innovation and development, of food ingredients for infant formula in the United States, including the restraints specifically alleged in this Complaint, directly and substantially restrains and affects interstate commerce.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

27. Upon information and belief, in October 2008 and perhaps as early as 2006, defendant Martek leveraged its monopoly position in the United States markets for DHA and ARA for infant formula to enter into several long-term, sole-source contracts with its largest infant formula customers, including Wyeth Nutritionals (now owned by Pfizer Inc.), Mead Johnson, and Abbott.

28. Martek has made it clear, through its own statements, that it holds a dominant market position with over 97% of the markets for DHA and ARA for infant formula in the United States.  Ex. 2.

According to its 2009 Annual Report, "[Martek's] oils are the only DHA and ARA oils used in infant formula in the U.S." Ex. 1 at *21.

29. Upon information and belief, Martek has abused its market position through long-term, sole-source contracts and through pricing incentives punishing customers that are not sole-sourced to Martek.

30. According to its 2009 Annual Report, "[s]ince 2006, [Martek has] entered into long-term supply agreements with four of [its] significant infant formula customers…. In general, these supply agreements establish, with limited exceptions, Martek as the exclusive supplier of all DHA and ARA for the respective customer's infant formula products." Ex. 1 at *15.

31. Upon information and belief, these contracts previously provided the customers with a right of early termination beginning in December 2011.

32. In late 2010, BNLfood learned through Martek's public securities filings that the terms of these exclusivity agreements were extended to December 2015, with an option for an additional four-year extension. According to Martek's Fourth Quarter 2010 results, "customers representing a total of 52% and 44% of Martek's current infant formula sales are now under contract through at least 2014 and 2015 respectively." Ex. 3. Upon information and belief, sole-source contracts represent even larger shares of Martek's business in the U.S. market.

33. Upon information and belief, Martek provides customers with graduated price reductions over the term of these sole-source supply agreements. According to Martek's 2009 Annual Report, without entering into an exclusive contract with Martek to purchase DHA and ARA, "customers would typically pay [Martek] greater amounts for the DHA or ARA that they purchase . . . ." Ex. 1 at *15.

34. Upon information and belief, only through dealing exclusively with Martek are customers able to receive substantial price reductions.

35. Upon information and belief, if Martek is permitted to maintain these sole-source supply agreements for their full terms, Martek stands to gain monopoly profits in the hundreds of millions of dollars.

36. Plaintiff manufactures DHA and ARA from eggs in a process that is natural, as an alternative to the bioengineered algae-based product manufactured by Martek.

37. Upon information and belief, Plaintiff's product offers several advantages over Martek's product. These advantages include the fact that Plaintiff's product is made via a natural process and is resistant to oxidation. Upon information and belief, customers have indicated that these attributes are desirable in DHA and ARA products for infant formula.

38. In 2010, the U.S. Department of Agriculture's National Organic Program announced that bioengineered DHA and ARA had been incorrectly approved for inclusion in organic infant foods, because they are extracted from algae using a neurotoxic chemical, hexane, which is explicitly banned in organic production.

39. Additionally, upon information and belief, end customers of infant formula companies, particularly customers of those companies that otherwise label their formulas as "organic," have voiced numerous complaints about the hexane extraction method, citing fears of poisoning by residual amounts of hexane, which has been correlated to gastrointestinal problems and "failure to thrive" in infants.

40. Upon information and belief, customers are eager to find a second source of supply for DHA and ARA in the U.S., as this presents them with greater choices for key infant formula ingredients and also offers the opportunity to obtain these ingredients from naturally sourced eggs, as opposed to a bioengineered product.

41. Customers have indicated to BNLfood that they would be interested in purchasing competing products, but that they are prohibited from doing so by these long-term contracts with Martek.

42. BNLfood plans, and is well-positioned, to enter the markets for DHA and ARA for infant formula in the U.S. and, therefore is a competitor to Martek.

43. BNLfood has demonstrated its intent and preparedness to enter the markets for DHA and ARA for infant formula in the U.S. through:

   A. BNLfood's extensive background and experience in food sciences, specifically in the markets for DHA and ARA ingredients for infant formula. BNLfood has devoted extensive resources to research and development in the area of extracting DHA and ARA from egg products;

   B. Affirmative efforts to engage in the proposed business, including compilation of a dossier of scientific data in support of its voluntary submission for a Generally Recognized as Safe ("GRAS") determination from the FDA for the formula ingredients, DHA and ARA. Based on customer feedback, BNLfood timed this entry process to coincide with the expiration of Martek's exclusive arrangements, contracts that were subsequently renewed;

   C. The expenditure of significant capital on research and development as well as the addition of substantial plant capacity for production. BNLfood has invested substantial time and funds, over 12 years and an amount far exceeding 10 million Euro, building and expanding its facilities so that it could ensure the efficient manufacture of DHA and ARA marketed to a U.S. audience. This includes the recent addition of a facility with 1,200 metric tons of capacity;

    D. The execution of numerous contracts in furtherance of its DHA and ARA development. Some customers not bound by Martek's exclusivity provisions, including Nature's One, PBM Nutritionals, and Glanbia Nutritionals, are either placing orders with BNLfood or currently testing its product for use in their formula; and

    E. The successful sale of DHA and ARA ingredients to certain infant formula customers outside the U.S. who are unconstrained by exclusive contracts with Martek.

44. BNLfood's voluntary GRAS approval is in the final stages, and expert FDA consultants estimate that receipt is likely by October 2011.

45. GRAS ingredients do not require pre-market approval to enter the U.S. market; however, BNLfood believes the FDA's approval of the safety of its product will help BNLfood reach its full potential in the markets for DHA and ARA for infant formula in the U.S.

46. According to certain scientists and customers, the ideal product combination of DHA and ARA in infant formula would be a blend of partially bioengineered and partially egg-extracted product. To achieve maximum benefits for infant health, customers should be allowed to purchase both DHA and ARA engineered from algae and BNLfood's egg yolk phospholipids.

47. BNLfood has approached large customers such as Mead Johnson, Wyeth, and Abbott Laboratories to gauge interest in BNLfood's innovative product.

48. Customers have tested BNLfood's products to gauge ease of incorporation into their infant formula and have experienced no technical barriers to using BNLfood's DHA and ARA.

49. While customers have reacted positively BNLfood's entry into the markets, they have also informed BNLfood that they are prohibited from placing orders because they are already locked in to long-term, sole-source contracts with Martek.

50. The effect of Martek's long-term, sole-source contracts may be to lessen competition or to tend to create or maintain a monopoly in the relevant markets in the United States, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as unreasonably to restrain trade in said market in violation of Section 3 of the Clayton Act, 15 U.S.C. §18, and Md. Code Com. Law II § 11-204(a).

## VIOLATIONS ALLEGED
## SHERMAN ACT, SECTION 2

51. As a result of its pattern of anticompetitive conduct, Martek has monopolized the markets for DHA and ARA in infant formula in the United States, controlling prices and excluding competition by means other than superior product, foresight and industry, and thereby possesses monopoly power in the market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

52. If not enjoined, Martek's unlawful exclusionary and predatory conduct will continue, with the results, among others, that BNLfood will be frozen out of the relevant markets, customers for the relevant products will have reduced choices and pay higher prices, and consumers will be deprived of a more natural substitute for Martek's bioengineered technology, as well as price and non-price competition that would otherwise benefit them.

53. As a result of this violation the plaintiff is threatened with loss or damage in the form of lost investments and lost profits through the inability to access the market, such that plaintiff is entitled to bring suit under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, to obtain damages and permanent injunctive relief to prohibit the defendant's exclusive dealing agreements, and to recover plaintiff's costs of suit, including a reasonable attorney's fee.

## CLAYTON ACT, SECTION 3

54. The conduct of the defendant described hereinabove substantially lessens competition in the relevant market in the United States. Defendant's exclusive dealing arrangements with infant formula producers tie up a significant portion of the market, effectively foreclosing BNLfood from reasonable and fair access to a substantial portion of the market. As a result of this violation, the plaintiff is threatened with loss or damage in the form of lost investments and lost profits through the inability to access this market, such that plaintiff is entitled to recover damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. Plaintiff is also entitled to a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, restraining Martek from engaging in the anticompetitive acts. Unless defendant is enjoined from continuing its exclusive dealing agreements with customers, BNLfood will suffer further and irreparable harm for which there is no adequate remedy at law.

## MARYLAND ANTITRUST ACT § 11-204(A)
## (Md. Code Com. Law II § 11-204(a))

55. Martek's exclusionary agreements with infant formula manufacturers are contracts designed to maintain and/or expand Martek's monopoly in the DHA and ARA market, entered into for the purpose of excluding competition, including competition from BNLfood, in violation of the Maryland Antitrust Act, as enacted by the State of Maryland, Md. Code Com. Law II § 11-204(a).

56. If not enjoined, Martek's unlawful exclusionary and predatory conduct will continue, with the results, among others, that BNLfood will be frozen out of the relevant markets, customers for the relevant products will have reduced choices and pay higher prices, and consumers will be deprived of a more natural substitute for Martek's bioengineered technology, as well as price and non-price competition that would otherwise benefit them.

57. As a result of this violation the plaintiff is threatened with loss or damage in the form of lost profits through the inability to access the markets in spite of a demonstrated preparedness to enter, such that plaintiff is entitled to bring suit under Md. Code Com. Law II § 11-209(b), to obtain treble damages and permanent injunctive relief to prohibit the defendant's exclusive dealing agreements, and to recover plaintiff's costs of suit, including a reasonable attorney's fee.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands from this Honorable Court a judgment:

A. Declaring, finding, adjudging, and decreeing that the defendant's exclusive dealing arrangements violate Section 3 of the Clayton Antitrust Act, 15 U.S.C. § 14, Section 2 of the Sherman Act, 15 U.S.C. § 2, and Md. Code Com. Law II § 11-204(a);

B. Awarding to plaintiff monetary damages sustained as a result of defendant's violations of the Sherman Act, 15 U.S.C. § 2, in amounts to be ascertained at trial, such amounts to be trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15;

C. Awarding to plaintiff monetary damages sustained due to defendant's violations of Section 3 of the Clayton Act, 15 U.S.C. § 14, in amounts to be ascertained at trial, such amounts to be trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15;

D. Awarding to plaintiff monetary damages sustained due to defendant's violations of Section 11-204(a) of the Maryland Code, Md. Code Com. Law II § 11-204(a), in amounts to be ascertained at trial, such amounts to be trebled pursuant to Md. Code Com. Law II § 11-209(b)(4);

E. Preliminarily enjoining the defendant from engaging in exclusive dealing during the pendency of this action;

F. Permanently enjoining the defendant from continuing its exclusive dealing agreements;

G. Awarding to plaintiff its costs of suit, including a reasonable attorney's fee, as provided by Section 16 of the Clayton Antitrust Act, 15 U.S. C. § 26 and Md. Code Com. Law II § 11-209(b)(3);

H. Granting plaintiff such other and further relief to which it may be entitled and which the Court finds to be just and appropriate.

Dated:  February 17, 2011

Respectfully submitted,

**WHITE & CASE**LLP

/s/ Francis A. Vasquez, Jr.

Francis A. Vasquez, Jr. (Bar ID # 14941)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
E-mail: fvasquez@whitecase.com
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

OF COUNSEL:

**WHITE & CASE**LLP
George L. Paul
Rebecca H. Farrington
Jaime M. Crowe
701 Thirteenth Street, N.W.
Washington, D.C. 20005
E-mail: gpaul@whitecase.com
E-mail: jcrowe@whitecase.com
E-mail: rfarrington@whitecase.com
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Plaintiff*
*BNLfood Investments SARL*