IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BNLFOOD INVESTMENTS LIMITED<br>SARL,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-11-0446</td></tr>
<tr><td>MARTEK BIOSCIENCES CORP.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

BNLfood Investments Limited SARL ("BNLfood") sued Martek

Biosciences Corporation ("Martek") for violations of Section 2

of the Sherman Act,[1] Section 3 of the Clayton Act,[2] and the

Maryland Antitrust Act.[3]  For the following reasons, Martek's

motion to dismiss the amended complaint will be denied.[4]

I. Background[5]

BNLfood is a group of international companies based in

Luxembourg that has produced and marketed eggs, egg-derived

_____

[1] 15 U.S.C. § 2.

[2] 15 U.S.C. § 14.

[3] Md. Code Ann., Com. Law §§ 11-201 *et seq*.

[4] Martek's motion to dismiss the original complaint (ECF No. 4)
will be denied as moot.

[5] For Martek's motion to dismiss, the well-pled allegations in
BNLfood's amended complaint are accepted as true.  *See Mylan
Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

ingredients and additives, and egg-extracted proteins for 40 years.  Am. Compl. ¶ 12-13.  Its ingredients are distributed in more than 60 countries worldwide.  *Id.*

Martek is a Delaware corporation with its principal place of business in Columbia, Maryland. Am. Compl. ¶ 15.  Martek makes food ingredients from algae and fungi, including Omega-3 docosahexaenoic acid ("DHA")[6] and Omega-6 arachidonic acid ("ARA").[7]  *Id.*  Its DHA product, *life'sDHA*, is the only source of DHA used in infant formula in the United States and is used in more than 99 percent of all formula in the U.S. market.  Am. Compl. ¶ 17.  Martek holds the patent for bioengineered ARA. Am. Compl. ¶ 20.

Martek uses "long-term, sole-source contracts" that "punish" infant formula producers that do not buy DHA and ARA exclusively from Martek.  Am. Compl. ¶ 5.  Manufacturers that deal exclusively with Martek receive "substantial price reductions."  Am. Compl. ¶ 36.

In 1996, BNLfood began developing egg-phospholipids ("PPLs")[8] composed mainly of DHA and ARA made from eggs.  Am.

---

[6] DHA is used in infant formula, pregnancy and nursing products, foods, beverages, dietary supplements, and animal feeds.  Am. Compl. ¶ 16.

[7] ARA is used in infant formula and baby milk.  Am. Compl.  ¶ 16.

[8] Phospholipids are organic compounds of fats and other similar substances that are found in cell membranes.  *Websters New World*

2

Compl. ¶ 13, 38.  In 2002, BNLfood notified the Food and Drug
Administration ("FDA") of its intent to market its PPLs for use
in food.  *Id.*  Today BNLfood's PPLs are sold as toddler food
supplements in the United States.  *Id.*

BNLfood markets and sells its DHA and ARA in Europe and
Asia but also wants to sell the ingredients in the United
States.  Am. Compl. ¶ 14.  BNLfood is preparing to notify the
FDA that its ingredients are "generally recognized as safe"
("GRAS").  *Id.*  Under the Food, Drug, and Cosmetic Act,[9] any
substance intentionally added to food is a food additive subject
to premarket FDA approval, unless the substance is GRAS.  21
U.S.C. §§ 321(s), 348(b).  Although the FDA need not formally
declare a substance GRAS, a manufacturer may ask the FDA to
decide whether "a sufficient basis" exists for the
manufacturer's GRAS determination.[10]  Infant formula
manufacturers in the United States generally purchase
ingredients that are GRAS.  Am. Compl. ¶ 47.

_____

*Dictionary* 788, 1016 (3d college ed. 1988).

[9] 21 U.S.C. §§ 301, *et seq.*

[10] FDA, *Guidance for Industry: Frequently Asked Questions about
GRAS* (December 2004) [hereinafter "*FAQs About GRAS*"], *available
at www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/
GuidanceDocuments/;* Proposed Rule: Substances Generally
Recognized As Safe, 62 Fed. Reg. 18,938, 18,950 (Apr. 17, 1997).

To participate in the FDA's voluntary GRAS "notification program," a manufacturer provides the agency a notice describing the substance, the conditions of its use, and the scientific procedures the manufacturer used to conclude that the substance is GRAS.[11]  *FAQs About GRAS*.  The FDA aims to complete each review within 180 days.  *Id.*  BNLfood estimates that its FDA review will take about 180 days.  Am. Compl. ¶ 14.

In addition to preparing its GRAS notice to the FDA, BNLfood has made "significant" expenditures on research, development and marketing, and spent more than €10 million building and expanding its facilities to market DHA and ARA to U.S. infant formula manufacturers.  Am. Compl. ¶¶ 45-46.

BNLfood has also tried to deal with major infant formula manufacturers in the United States.  Am. Compl. ¶ 4.  Some manufacturers have placed orders with BNLfood or have tested its products.  Am. Compl. ¶ 45.  Other potential customers have said they are interested in dealing but are prohibited by their long-term contracts with Martek.  Am. Compl. ¶ 6.

On February 17, 2011, BNLfood sued, alleging that Martek's long-term sole-source contracts violate (1) Section 2 of the Sherman Act by lessening competition or tending to create or maintain a monopoly in the U.S. market, and (2) Section 3 of the

---

[11] BNLfood has hired experts and compiled a "dossier of scientific data" for its notice.  Am. Compl. ¶ 46.

4

Clayton Act, and the Maryland Antitrust Act, by unreasonably restraining trade in the U.S. market. Comp. ¶ 50.   On April 18, 2011, Martek moved to dismiss.  ECF No. 4.  On May 5, 2011, BNLfood amended its complaint.  ECF No. 12.[12]  On May 23, 2011, Martek moved to dismiss the amended complaint.  ECF No. 19.

II. Analysis

  A. Standard of Review

    Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

    The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).

    Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be

---

[12] BNLfood also opposed Martek's motion to dismiss the original complaint.  ECF No. 13.

sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).

"[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id.* (citation and internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or

unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. Martek's Motion to Dismiss

BNLfood asserts that Martek's long-term sole-source contracts violate (1) Section 2 of the Sherman Act by lessening competition or tending to create or maintain a monopoly in the U.S. market, and (2) Section 3 of the Clayton Act, and the Maryland Antitrust Act, by unreasonably restraining trade in the U.S. market. Am. Comp. ¶ 52. It seeks treble damages and injunctive relief. Am. Comp. ¶ 18. Martek contends that BNLfood lacks standing to sue because it has alleged neither an "antitrust injury" (required for standing to bring an antitrust action) nor actual injury (required for standing to bring any federal action under Article III of the Constitution). ECF No. 19 at 21, 30.

1. Antitrust Injury

"In a private antitrust action, a plaintiff must go beyond a showing that it meets the Article III standing requirements of injury, causation, and redressability; it must also demonstrate 'antitrust standing.'" *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 310 (4th Cir. 2007). In deciding whether a plaintiff has antitrust standing, a court must consider five factors:

> (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type

7

that Congress sought to redress in providing a private
remedy for violations of the antitrust laws; (3) the
directness of the alleged injury; (4) the existence of
more direct victims of the alleged antitrust injury;
and (5) problems of identifying damages and
apportioning them among those directly and indirectly
harmed.

*Id.* at 311.  The first two factors encompass "antitrust injury";

they "ensure that the plaintiff claims the proper *type* of

injury."  *Id.* at 311, 315.  The other three factors, which weigh

the "directness or remoteness of the plaintiff's alleged

antitrust injury," may "further constrict the number of private

plaintiffs" who may sue. *Id.*

The antitrust laws protect not only consumers and

competitors, but all victims of prohibited practices.  *See*

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S.

219, 236 (1948).  Thus, a defendant's potential competitor may

bring an antitrust action if it can show genuine intent and

preparedness to enter the relevant market.[13]  A plaintiff may

show this through its background and experience in the field,

financial ability to enter the market, relevant contracts, and

---

[13] *See, e.g., Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d
799, 807 (D.C. Cir. 2001); *Gas Utils. Co. of Ala., Inc. v. S.
Natural Gas Co.*, 996 F.2d 282, 283 (11th Cir. 1993) (per
curiam); *Bupar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir.
1985); *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466,
475 (7th Cir. 1983); *Huron Valley Hosp., Inc. v. City of
Pontiac*, 666 F.2d 1029, 1033 (6th Cir. 1981); *Martin v. Phillips
Petroleum Co.*, 365 F.2d 629, 633 (5th Cir. 1966).

acquisition of necessary facilities and equipment.[14]

Martek argues that BNLfood lacks antitrust standing because
it has not shown its intent and preparedness to enter the U.S.
DHA/ARA market.  ECF No. 19 at 23.  Martek contends that a mere
plan to file a GRAS notice does not show the requisite
preparedness, because FDA GRAS reviews can take many years.[15]
Martek also argues that BNLfood has failed to consider how long
it will take infant formula manufacturers using its ingredients
to comply with the requirements of the Infant Formula Act.[16]

BNLfood counters that it has alleged several indicia of its
intent and preparedness to enter the U.S. DHA/ARA market: its 40

---

[14] *Bupar,* 752 F.2d at 452; *Curtis v. Campbell-Taggart, Inc.,* 687
F.2d 336, 338 (10th Cir. 1982); *Huron Valley Hosp., Inc.,* 666
F.2d at 1033; *Hecht v. Pro-Football, Inc.,* 570 F.2d 982, 994
(D.C. Cir. 1977).

[15] Martek cites two examples of FDA GRAS reviews of DHA and ARA
that took more than 180 days: (1) a 52-month review of Abbott
Laboratories' notice; and (2) a 14-month review of Martek's
notice, after the FDA rejected a notice filed 18 months earlier.
ECF No. 19 at 17-18, *citing* FDA Agency Response Letters/GRAS
Notices Nos. 000041 (May 17, 2001), 000007 (Mar. 4, 1999), and
000094 (Apr. 18, 2006), *available at www.accessdata.fda.gov/
scripts/fcn/fcnNavigation.cfm?rpt=grasListing* (click on "GRAS
Database Listing," sort by "GRN No. ASC," then click on records
7, 41 and 94) (last visited Dec. 6, 2011).

[16] ECF No. 19 at 25-27.  Infant formula manufacturers must notify
the FDA 90 days before marketing any formula that has undergone
a "major change" in "processing or formulation," such as the use
of new ingredients.  21 U.S.C. § 350a(d); 21 C.F.R. §
106.30(c)(2).  Martek contends that this process "could add
years" to BNLfood's anticipated entry to the U.S. market,
because the formula manufacturers will have to conduct "clinical
testing" to ensure the safety of the formula.  ECF No. 19 at 26;
ECF No. 21 at 6.

9

years of experience producing and marketing egg-derived food
additives in 60 countries; its development of PPLs composed of
DHA and ARA; European Union approval for its PPLs; its 2002
notification to the FDA that it intended to market PPLs for use
in food; current use of its PPLs in toddler food supplements in
the United States; the more than €10 million it has spent to
build and expand its facilities to manufacture DHA and ARA for
U.S. customers; its contracts for staff and equipment to enter
the U.S. market; the sale of its PPLs to infant formula
manufacturers outside the United States; the marketing of its
ingredients to U.S. customers; its contacts with potential U.S.
customers, who have said they cannot deal with BNLfood because
of Martek's contracts; and its pursuit of FDA review of its GRAS
determination. ECF No. 20 at 4-5. BNLfood also contends that
the Infant Formula Act does not apply to it, because BNLfood
does not manufacture infant formula. ECF No. 20 at 12.

BNLfood has adequately pled the intent and preparedness
necessary to establish antitrust standing. It alleges facts
demonstrating experience in the field, financial ability to
enter the market, relevant contracts, and acquisition of
equipment, facilities, and staff. *See e.g.*, *Hecht*, 570 F.2d at
994. FDA review of BNLfood's GRAS determination is voluntary,
and alleging mere anticipation of FDA approval may indicate

preparedness to enter a market.[17]   At this stage, BNLfood need

not address a statute (the Infant Formula Act) that does not

bind manufacturers of individual ingredients of formula.   *See*

*supra* n.16.   Martek's list of other reasons for BNLfood's

failure to enter the market does not require dismissal of the

complaint.   "[A]t the motion to dismiss stage" of an antitrust

action, "the plaintiff's allegations need not rule out a

defendant's explanations."   *Haley Paint Co. v. E.I. Dupont de*

*Nemours & Co.*, ---F. Supp. 2d---, 2011 WL 1197643, at *5 (D Md.

2011).   Rather, the plaintiff must simply allege "plausible

grounds" for its claim -- "enough facts to raise a reasonable

expectation that discovery will reveal evidence" of the claim.

*See Twombley*, 550 U.S. at 556.[18]

     BNLfood has sufficiently pled antitrust injury by asserting

that it has been "excluded from participat[ing] in a particular

market, and the result [is] a decrease in competition in that

market."   *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*,

688 F. Supp. 2d 443, 460 (E.D. Va. 2009) (internal citations and

---

[17] *See Andrx Pharma. Inc.*, 256 F.3d at 807-08; *Roxane Labs., Inc. v. SmithKline Beecham Corp.*, Case No. 09-CV-1638, 2010 WL 331704, at *3 (E.D. Pa. Jan. 26, 2010) ("the *Andrx* court does not declare that a specific allegation regarding probability of FDA approval is an absolute requirement of the intent and preparedness standard").

[18] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombley*, 550 U.S. at 556.

quotation marks omitted). "Beyond that, an analysis of antitrust injury is more properly conducted after discovery." *Id.* (internal citation and quotation marks omitted).

2. Actual Injury

Martek also argues that BNLfood has failed to allege an injury in fact entitling it to damages under Article III, or irreparable harm entitling it to injunctive relief. *See* ECF No. 19 at 30-31; ECF No. 21 at 9.

Article III standing requires plaintiffs to show, *inter alia*, "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lux v. Judd*, 651 F.3d 396, 400 (4th Cir. 2011). "The concept of antitrust standing is narrower than constitutional standing." *Novell*, 505 F.3d at 311 n.16. Thus, "[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983). Because BNLfood adequately alleged antitrust injury, *see supra* Part II.B.1, it has adequately pled an Article III injury.

To obtain injunctive relief, a plaintiff generally must prove, *inter alia*, irreparable injury. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011). But "where a statute authorizes injunctive relief for its enforcement,

12

plaintiffs need not plead and prove irreparable injury." *Envtl.*

*Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 338.  BNLfood seeks

injunctive relief under Section 16 of the Clayton Act, which

states that a plaintiff "shall be entitled to . . . have

injunctive relief . . . against threatened loss or damage by a

violation of the antitrust laws."  15 U.S.C. § 26.  Accordingly,

BNLfood need not plead irreparable injury.

III. Conclusion

For the reasons stated above, Martek's motion to dismiss

the amended complaint will be denied.

_12/13/11_
Date

_____
William D. Quarles, Jr.
United States District Judge