IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| BNLFOOD INVESTMENTS LIMITED SARL, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-11-0446 |
| DSM NUTRITIONAL PRODUCTS, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

BNLfood Investments Limited SARL ("BNLfood") sued Martek Biosciences Corporation ("Martek")[1] for violations of section 2 of the Sherman Act,[2] section 3 of the Clayton Act,[3] and the Maryland Antitrust Act.[4] ECF No. 1. Pending is BNLfood's motion to alter or amend the judgment.[5] ECF No. 95. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following

---

[1] On June 30, 2012, Martek was merged into DSM Nutritional Products, LLC. ECF No. 62. The docket has been corrected to reflect this change. For simplicity, the Court will refer to the defendant as "Martek."

[2] 15 U.S.C. § 2.

[3] 15 U.S.C. § 14.

[4] Md. Code Ann., Com. Law §§ 11-201 et seq. (West 2010).

[5] Both parties' unopposed motions to seal their briefs will be granted. ECF Nos. 97, 100, 103.

reasons, BNLfood's motion will be granted in part and denied in part.

I. Background[6]

Martek is a biotechnology company that sells docosahexaenoic acid ("DHA") derived from algae and arachidonic acid ("ARA") from fungus for use in infant formula.[7] Def. Ex. 9 at 6. DHA and ARA assist in infant brain and eye development. Id.

BNLfood is a holding company for a family of companies that produce food, chemicals, pharmaceuticals, and other products.[8] See Def. Ex. 25 at 207:1-16; Def. Ex. 26 at 79:15-21. The Lipid Company is the BNLfood subsidiary responsible for phospholipid products, including DHA and ARA from eggs. See Def. Ex. 26 at 169:16-24.

---

[6] The Court presents a summarized version of the facts in this case for purposes of resolving this motion. For a fuller explanation of the events that preceded this lawsuit, see the Court's previous opinion, *BNLfood Inv. SARL v. Martek Biosciences Corp.*, CIV. WDQ-11-0446, 2013 WL 1325274 (D. Md. Mar. 28, 2013).

[7] Under the Food, Drug, and Cosmetic Act and implementing regulations, "infant formula" is a food for persons not more than 12 months old simulating or substituting for human milk. See 21 U.S.C. § 321(z); 21 C.F.R. § 105.3(e).

[8] Like the parties, the Court will use "BNLfood" to refer to the various related entities unless there is a reason to do otherwise. See generally ECF Nos. 78, 82.

A. Martek's Sales of DHA and ARA

Since 2005 Martek has maintained a nearly 100% market share of the DHA and ARA used in infant formula in the United States by supplying four infant formula manufacturers: Mead Johnson & Company ("Mead"), Abbott Laboratories ("Abbott"), Nestle, Ltd. ("Nestle"), and PBM Products, LLC ("PBM"). See, e.g., Pl. Ex. 1 at 88:7-21; Pl. Ex. 5-7 (agreements).

At some time,[9] Martek notified Mead of a price increase to occur during the fall of 2005. Pl. Ex. 14 at MTK-E-0051186. Effective January 1, 2006, Martek and Mead executed a sole source agreement ("SSA"), in which Mead agreed to buy all its required DHA and ARA for use in infant formula from Martek. Pl. Ex. 13. In April and May 2007, Martek notified its other customers that it was going to increase its DHA and ARA prices effective July 1, 2007.[10] Pl. Ex. 17. In October 2007, Abbott signed an SSA with Martek, retroactive to January 1, 2007. Pl. Ex. 18. Nestle and PBM did not agree to SSAs, and Martek increased their prices. See Pl. Ex. 21 at MTK-E-0096778; Pl. Ex. 24; Pl. Ex. 138. To avoid another price increase, PBM signed a new license and supply agreement in September 2009. See Pl. Exs. 27-29. This agreement, although not an SSA, gave PBM pricing options with (A) Martek as the sole source of DHA

---

[9] The date is not in the record.

[10] The increases varied among the customers. See Pl. Ex. 17.

3

and ARA or (B) Martek as the sole source of either DHA or ARA. Pl. Ex. 142 at MTK0004238.

B. BNLfood and the Infant Formula Market

BNLfood first tried to market its DHA and ARA products in the United States around 2000, with greater effort from 2004 to 2009. Def. Ex. 29 ¶ 4. On November 9, 2009, BNLfood representatives met with Mead personnel; however, the Mead employees present "were in general agreement that the DHA and ARA products marketed by [BNLfood] did not merit further evaluation or consideration by [Mead] at the time." Def. Ex. 6 ¶ 6. Mead was concerned because BNLfood's products were derived from eggs, an allergen, and additional clinical testing would be required. Id.

BNLfood's negotiations with Abbott in 2009 and 2010, and PBM in 2010, were similarly unproductive. See Pl. Ex. 110; Def. Exs. 7, 57. Negotiations with Nestle were more successful, but the only Nestle unit interested in BNL products was a dairy business in China. See Pl. Ex. 86 at BNL0006642.

C. Procedural History

On February 17, 2011, BNLfood filed suit seeking treble damages[11] and attorneys' fees for violations of section 2 of the

---

[11] BNLfood sought treble damages, *inter alia*, under section 4 of the Clayton Act, which provides:

4

Sherman Act, section 3 of the Clayton Act, and the Maryland Antitrust Act. ECF No. 1 at 3. It also sought a permanent injunction under section 16 of the Clayton Act[12] prohibiting Martek "from continuing its exclusive dealing arrangements with customers." *Id.* at 11. On May 5, 2011, it filed an amended complaint which sought relief under the same statutory provisions as the original complaint. *See* ECF No. 12 at 12-14.

On December 14, 2011, the Court denied Martek's motion to dismiss BNLfood's claims for damages and injunctive relief. *See* ECF Nos. 26 at 12-13; 27.

On August 10, 2012, Martek moved for summary judgment on all counts of the amended complaint, arguing that BNLfood: (1) failed to show that Martek's conduct violated the antitrust laws; (2) lacked antitrust standing; and (3) lacked Article III standing. *See* ECF Nos. 78, 78-1. On September 10, 2012,

---

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

15 U.S.C. § 15(a).

[12] 15 U.S.C. § 26.

5

BNLfood opposed the motion. ECF No. 82. On September 28, 2012, Martek replied. ECF No. 84.

On March 28, 2013, the Court granted Martek's motion for summary judgment. ECF No. 93. The Court found that triable issues of fact existed on the definition of the relevant product market, whether Martek had monopoly power, whether the SSAs were procompetitive under the rule of reason, BNLfood's preparation to enter the U.S. market, and whether the SSAs harmed competition. ECF No. 92 at 15-27. However, the Court granted Martek summary judgment, because BNLfood failed to establish, with anything more than "speculative" evidence, that Martek's actions "substantially or materially" injured BNLfood. *Id.* at 30, 34. Without a showing of harm caused by the SSAs, BNLfood could not establish antitrust standing.[13] *See id.* at 28-34.

On April 25, 2013, BNLfood filed a Rule 59(e) motion to alter or amend the Court's March 28, 2013 summary judgment order, asserting that neither Martek's summary judgment motion, nor the Court's opinion and order, addressed BNLfood's claim for injunctive relief. *See* ECF No. 95 at 1-2. BNLfood also argued that the evidence showed that it had been harmed by the SSAs.

---

[13] Having found no antitrust standing, the Court declined to consider whether BNLfood had Article III standing. *See* ECF No. 92 at 34 n.38.

6

*Id.* at 5-10. On May 9, 2013, Martek opposed BNLfood's motion. ECF No. 99. On May 28, 2013, BNLfood replied. ECF No. 102.

II. Analysis

A. Legal Standard

Under Federal Rule of Civil Procedure Rule 59(e),[14] the Court will grant a motion to alter or amend an earlier judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008); *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002). Rule 59(e) allows the district court to correct its errors and thereby avoid burdening the parties and appellate courts with unnecessary appellate proceedings. *Pac. Ins.*, 148 F.3d at 403 (*citing Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of

---

[14] A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed.R.Civ.P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992). Because BNLfood filed its motion 28 days after the entry of the judgment it seeks to amend, it properly brings its motion under Rule 59(e).

7

the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* A party's disagreement with the Court's decision is also not a basis for granting a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).[15]

BNLfood does not assert that it is entitled to relief based on the first two grounds for Rule 59(e) relief--new evidence or a change in controlling law. *See* ECF No. 95 at 2-3. Thus, the Court will only address the third ground--to correct a clear error of law or prevent manifest injustice. *See Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010).

B. Antitrust Standing for Injunctions

In its summary judgment motion, Martek moved "for summary judgment on all counts set forth in the plaintiff's Second Amended Complaint." *See* ECF No. 78 at 1. Martek argued that BNLfood lacked antitrust standing generally--it did not distinguish between standing for damage claims and standing for injunctions or mention BNLfood's section 16 claim. *See, e.g., id.* at 45-46.

---

[15] *See also Pritchard v. Wal Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001). ("When the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to 'change its mind,' relief is not authorized."); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2002).

In moving to amend the judgment, BNLfood faults Martek for failing to explicitly address the injunction standard for antitrust standing in its summary judgment motion. *See* ECF No. 95 at 1. As a result of Martek's alleged failure, "the Court's summary judgment ruling does not address BNLfood's claim for injunctive relief." *See id.* at 2. Because the standard for antitrust standing is less stringent for injunctions than damages, and BNLfood allegedly meets the lower standard, BNLfood requests that the Court alter or amend its judgment to correct its alleged clear error of law or to prevent manifest injustice to it. *See id.* at 4-5. In response, Martek argues that, by requesting summary judgment on all counts, it "unquestionably ask[ed] for judgment on both the [section 4] damages claims . . . as well as the [section 16] request for injunctive relief." ECF No. 99 at 1.

Section 16 of the Clayton Act provides for "injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110-11 & n.5, 107 S. Ct. 484, 489-90 & n.5, 93 L. Ed. 2d 427 (1986), the Supreme Court held that the standards for antitrust standing for damage claims and injunctions differ. Although both sections 4 and 16 of the Clayton Act require allegations of "an injury of the type the antitrust laws were designed to prevent," the antitrust injury

required to establish a claim under each section differs. *See Cargill*, 479 U.S. at 109-13, 107 S. Ct. at 487-491. Under section 4, the plaintiff must prove actual antitrust injury "'that flows from that which makes defendants' acts unlawful.'" *Id.* at 112-113, 107 S. Ct. at 490-91 (*quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 697, 50 L. Ed. 2d 701 (1977)). Under section 16, however, the plaintiff need only allege "*threatened* loss or damage." *Id.* at 113, 107 S. Ct. at 491 (emphasis added); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 13 (1st Cir. 2008) (noting that "the requirements for standing for injunctive relief are less stringent than those under section 4 of the Clayton Act").

In its summary judgment motion, Martek only argued that BNLfood was not harmed by Martek's actions; it did not address whether its conduct threatened BNLfood with harm. *See, e.g.*, ECF No. 78-1 at 37-38. Under Federal Rule of Civil Procedure 56, the moving party has the burden of establishing that no genuine issues of material fact exist with respect to each claim for which the movant seeks summary judgment. *See* Rule 56(a) ("A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact . . . ."); *Adickes v.*

10

*S. H. Kress & Co.*, 398 U.S. 144, 161, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142 (1970) ("[T]he party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required."). By failing to address BNLfood's section 16 claim in its motion for summary judgment, Martek did not meet its burden of showing that it was entitled to summary judgment on that claim. *See Bradford v. HSBC Mortgage Corp.*, 799 F. Supp. 2d 625, 634-35 & n.20 (E.D. Va. 2011) (denying summary judgment on claim that was not "squarely address[ed]" in summary judgment memoranda); *Jones v. New York City Health & Hosp. Corp.*, 00 CIV. 7002 (CBM), 2003 WL 21262087, at *1 (S.D.N.Y. May 29, 2003) (although defendants moved for summary judgment on all claims, they did not address one claim in their motion and so "did not meet their burden [on summary judgment] with respect to [that] claim"); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 638-39 (E.D. Va. 2004) ("[It] is not the responsibility of the Court to ferret out, from a brief, the legal contentions of the moving party and then to find legal and evidentiary support for them. Likewise, it is not the responsibility of the nonmoving party to engage in a similar exercise in rebutting a motion for summary judgment.") (*citing*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

Further, the Court never ruled on the injunction claim in its memorandum opinion or order granting summary judgment, and it previously denied Martek's motion to dismiss the injunction claim. *See* ECF Nos. 26 at 12-13; 27; 92; 93. Accordingly, the claim has not been adjudicated, and BNLfood has shown a clear error of law in the Court's opinion and order. *See Drug Mart Pharmacy Corp. v. Am. Home Products Corp.*, 93-CV-5148, 2007 WL 4526618, at *2, *15 (E.D.N.Y. Dec. 20, 2007) (granting Rule 59(e) motion vacating summary judgment on equitable relief claims under section 16 when defendants did not move for summary judgment on those claims and court erroneously stated in order that the plaintiffs only sought damages); *see also C.H. ex rel. Hardwick v. Heyward*, 404 F. App'x 765, 767-68 (4th Cir. 2010) (dismissing appeal for lack of jurisdiction because--although district court labeled summary judgment order as a "final" judgment--it did not address or adjudicate one of the plaintiff's claims and thus only granted partial summary judgment). Martek's Rule 59(e) motion will be granted insofar as it requests that the Court vacate summary judgment on its section 16 injunction claim. *See* ECF No. 95 at 5.

C. Antitrust Standing for Damage Claims

BNLfood uses the remainder of its Rule 59(e) motion to argue that the Court incorrectly concluded that BNLfood had not produced sufficient evidence of its injuries to support antitrust standing under section 4. *See* ECF No. 95 at 6. It requests that the Court "allow BNLfood to proceed to trial on its Section 4 claim." *Id.* at 2. In response, Martek contends that BNLfood is simply "rehash[ing]" evidence that the Court addressed in its previous ruling. ECF No. 99 at 7.

BNLfood offers no new arguments or evidence--it simply reviews the evidence it presented to oppose Martek's motion for summary judgment and reiterates the arguments it already had made. *Compare* ECF No. 82 at 22-38, *with* ECF No. 95 at 5-10. BNLfood's disagreement with the Court's resolution of Martek's summary judgment motion is not a basis for relief under Rule 59(e). *See Hutchinson*, 994 F.2d at 1082. Although BNLfood will be granted relief on its Rule 59(e) motion as to its section 16 injunction claim, the remainder of BNLfood's motion to reconsider the Court's holding that it presented insufficient evidence of harm from the SSAs to survive Martek's motion for summary judgment on its remaining claims will be denied.

III. Conclusion

For the reasons stated above, the plaintiff's motion to alter or amend the judgment will be granted in part and denied in part.

_3/13/14_
Date

_____
William D. Quarles, Jr.
United States District Judge